**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ARMENIAN MISSIONARY ASSOCIATION OF AMERICA, INC., | Civil Action No. 15-cv-03328-SDW-SCM |
| Plaintiff, | |
| v. | **OPINION** |
| TD BANK, N.A. and JPMORGAN CHASE BANK, N.A., | September 11, 2015 |
| Defendants. | |

**WIGENTON**, District Judge.

Before the Court are two motions to dismiss Plaintiff Armenian Missionary Association of America, Inc.'s ("Plaintiff" or "AMAA") Complaint. Defendants TD Bank, N.A. and JPMorgan Chase Bank, N.A. (collectively "Defendants") seek dismissal for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF Nos. 9, 10.) This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court **GRANTS** Defendants' Motions to Dismiss.

---

[1] As the arguments advanced by the Defendants are virtually identical, and the relief sought is the same, this Court will address both motions in this opinion.

I.      BACKGROUND

Plaintiff is a non-profit organization that relies on donations to provide aid and assistance to Armenians throughout the world. (Amend. Compl. ¶ 1.) Plaintiff seeks relief against Defendants for failure to conduct proper due diligence under N.J.S.A. 12A:3-420(a) (Count I), failure to exercise good faith and/or ordinary care under N.J.S.A. § 12A-405(b) (Count II), and seeks damages for breach of a duty of care under common law negligence (Count III). (Id. ¶¶ 22-32.) Plaintiff's claims stem from a series of alleged thefts by its former employee, Tigran Melkonyan ("Melkonyan"), of over $800,000 in donations. (Id. ¶ 11.)

Melkonyan is alleged to have commenced this scheme in 2006 by opening an account at TD Bank in the name of "Armenian Mission Association of America" and depositing donation checks made payable to, for example, the "Armenian Missionary Association of America," or the "Armenian Missionary Assoc. /America" or, in the vast majority, simply "AMAA."[2] (Id. ¶¶ 11, 12.) AMAA claims that it "believes" donation checks were also deposited into a Chase Bank account opened by Melkonyan under the same name. (Id. ¶¶ 18, 20.) AMAA does not, however, identify or attach a single check belonging to AMAA that was deposited into the Chase account. (Id. ¶ 20.)

AMAA employed Melkonyan from August 1999 until his resignation in April 2014. (Id. ¶¶ 5-6.) Melkonyan's job duties centered on AMAA's child sponsorship and child education programs, but did not include responsibility for processing, recording, or depositing AMAA's donation checks. (Id. ¶ 6.) However, Plaintiff admits that "on a very rare occasion, Melkonyan was

---

[2] According to AMAA, Melkonyan deposited at least one donation check in the amount of $295,000 that was explicitly made payable to "Armenian Missionary Association of America", and not the "Armenian Mission Association of America", into Melkonyan fraudulent TD bank account. (Amend. Compl. ¶ 12.)

asked to go to the bank to deposit donation checks when the person responsible for depositing checks was unavailable." (Id.)

In February of 2015 AMAA demanded documents relating to Melkonyan's account from Defendants, in which deposits of donation checks made payable to AMAA were discovered. (Id. ¶¶ 12-14.)

Based on the Melkonyan's conduct, AMAA asserts the following claims against Defendants: 1) Relief under N.J.S.A. § 12A:3-420(a) (Count I), alleging that Defendants are liable for failing to conduct proper due diligence when Melkonyan opened the bank accounts under the name of "Armenian Mission Association of America" (Id. ¶¶ 22-24.); 2) Relief under N.J.S.A. § 12A:3-405(b) (Count II), alleging that Defendants failed to exercise good faith and/or ordinary care by accepting the deposits, especially if at least some checks were made payable to the "Armenian Missionary Association of America" – a facially different payee than the entity assigned to the TD account (Id. ¶¶ 25-28.); 3) Common law negligence (Count III), on the grounds that Defendants' actions substantially contributed to the loss that resulted from the fraud, in breach of a duty owed to Plaintiff. (Id. ¶¶ 29-32.)

Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.)

## II.    LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v.*

*County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

Defendants seek dismissal on three grounds: 1) the statute of limitations under the New Jersey Uniform Commercial Code ("NJ UCC") bars recovery on Plaintiff's claims that accrued prior to April 2, 2012; 2) the NJ UCC precludes Plaintiff's statutory claims; and 3) Plaintiff's claims are unduly speculative and do not satisfy the *Twombly* pleading standard. (Def.'s R. Br. ¶ 1.)

*Plaintiff's NJ UCC claims*

The NJ UCC provides a three-year statute of limitations on negotiable instruments. N.J.S.A. § 12A:3-118(g) (applying a three-year statute of limitations to chapter 3 of the NJ UCC

4

for checks containing a forged or blank endorsement). New Jersey courts have held that an action involving negotiable instruments accrues at the time the item or check is negotiated. *New Jersey Lawyers' Fund for Client Protection v. Pace*, 374 N.J. Super. 57, 67 (App. Div. 2005), *aff'd per curiam*, 186 N.J. 123 (2006); *Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank*, 390 N.J. Super. 199, 204 (App. Div. 2007).

Plaintiff commenced this action on April 2, 2015. (Amend. Compl. ¶ 1.) Pursuant to NJ UCC's three-year statute of limitations, Plaintiff's claims regarding checks that were negotiated prior to April 2, 2012 are time barred. N.J.S.A. § 12A:3-118(g). Plaintiff concedes that the NJ UCC imposes a three-year statute of limitations, but asserts that, "to the extent that the AMAA is able to establish a common law claim outside of the UCC, the three year statute of limitations will not apply at all." (Amend. Compl. ¶ 17.) In essence, Plaintiff seeks to apply the so-called "time of discovery rule" which provides that in an appropriate case, the accrual of a claim may be tolled "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez v. Swyer*, 62 N.J. 267 (1973).

This Court rejects Plaintiff's invocation of the time of discovery rule here because the New Jersey Supreme Court has held, and the Third Circuit agrees, that the time of discovery rule impedes uniform applicability of the NJ UCC's across commercial transactions and thus will "not apply to actions against banks for conversions of negotiable instruments where there was no assertion of fraudulent concealment by the bank." *Pace*, 374 N.J. Super. at 65; *Psak, Graziano, Piasecki & Whitelaw*, 390 N.J. Super. at 204-205; *Menichini v. Grant*, 995 F.2d 1224, 1229-31 (3d Cir. 1993) ("vigorous application of the statute of limitations is a reasonable means of achieving certainty in commercial transactions."). Here, Plaintiff has not alleged that Defendants

5

colluded with Melkonyan or were complicit in his scheme to misappropriate his employer's funds. Therefore, the NJ UCC's three-year statute of limitations apply.

*Conversion*

Under N.J.S.A. § 12A:3-420(a), a depositary bank is liable for conversion only where there is a forged indorsement. *See* § 12A:3-420, cmt. 1 (explaining that this provision "covers cases in which a depositary bank or payor bank takes an instrument bearing a forged indorsement."). However, a "deposit in a depositary bank in an account in a name substantially similar to that of Employer is the equivalent of an indorsement in the name of the Employer" and does not constitute a forged signature. *See* N.J.S.A. § 12A:3-405(c), cmt. 3.

Here, Plaintiff's allegation is insufficient to establish a claim for conversion because there is no proof of forgery. Melkonyan created a fake company ("Armenian Mission Association of America") that was very similar in name to the named payee indicated on the checks at issue (compare "Armenian Missionary Association of America" and "Armenian Missionary Assoc. /America"). (Amend. Compl. ¶ 12.) The NJ UCC deems a substantially similar payee to be the same as the intended payee, and not a forgery. *See* N.J.S.A. § 12A:3-405(c). Therefore, Plaintiff is not entitled to relief under its theory for conversion.

Ordinarily, a bank will "bear[] the risk of loss when it makes or obtains payment on a fraudulently indorsed check." *Schrier Bros. v. Golub*, 123 Fed. Appx. 484, 487 (3d Cir. 2005). However, N.J.S.A. § 12A:3-405(b) provides that the burden of loss shifts to the named payee where a "bank has acted in good faith and the indorsement is made by an employee of the payee entrusted with 'responsibility' for the check." § 12A:3-405(b).

There is no dispute that Melkonyan was partially responsible for depositing checks on his employer's behalf. Furthermore, Plaintiff's complaint is devoid of factual allegations that suggest

6

that Defendants did not act in good faith in depositing the checks in the accounts associated with the similarly named payees. Plaintiff's allegations that Defendants "failed to exercise good faith and/or ordinary care by accepting the deposits, especially when at least some checks were made payable to the 'Armenian Missionary Association of America' – a different payee than the entity to the [] bank account" can only be described as conclusory at best. (Amend. Compl. ¶ 16.) As such, Plaintiff's statutory claims will be dismissed.

*Plaintiff's Common Law claims*

It is well settled New Jersey law that a bank does not owe a general duty of care to non-customers. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 400 (2009) ("[I]n the unique context of whether a bank owes a duty to a non-customer, it is clear that '[a]bsent a special relationship, courts will typically bar claims of non-customers against banks'.") (internal citations omitted); *Pennsylvania Nat'l Turf Club, Inc. v. Bank of West Jersey*, 158 N.J. Super. 196, 203 (App. Div. 1978) (holding that "bank owed no general duty to [non-constomer] Turf Club" for the bad checks of its customer). Here, Plaintiff's concedes that there is no banking relationship between Plaintiff and Defendants. (Amend. Compl. ¶ 9.) Plaintiff does not identify or submit to this Court any "agreement, undertaking or contract" creating a special duty owed to it by Defendants. Further, the NJ "UCC displaces common law claims where reliance on the common law would thwart the purposes of the UCC". *See Psak, Graziano, Piasecki & Whitelaw*, 390 N.J. Super. at 204-205.

> The UCC "shall be liberally construed and applied to promote its underlying purposes and policies[,]" N.J.S.A. 12A:1-102(1) which are "to simplify, clarify and modernize the law governing commercial transactions", and "to make uniform the law among the various jurisdictions." N.J.S.A. 12A:1-102(2)(a). Thus, the UCC's limitations period applies broadly to actions to enforce "an obligation, duty, or right arising under [Article 4]," N.J.S.A. 12A:4-111, and Article 4 generally "defines the rights between the parties

> with respect to bank deposits and collections." N.J.S.A. 12A:4-101, Official Comment 3. Necessarily then, the existence of such a comprehensive remedy to address plaintiff's claim of improper payment in this case precludes a common-law negligence claim against either party. "Only in very rare instances should a court upset the legislative scheme of loss allocation and permit a common-law cause of action." *Bank Polska Kasa Opieki v. Pamrapo Savings Bank*, 909 F. Supp. 948, 956 (D.N.J.1995); *see also Girard Bank v. Mount Holly State Bank*, 474 F. Supp. 1225, 1239 (D.N.J.1979) (noting that "[c]ourts should be hesitant to improvise new remedies outside the already intricate scheme of Articles 3 and 4."); *see also New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339, 345 (3d Cir. 1982) (a common-law tort action is barred where Article 8 provides a "comprehensive remedy").

*Id*. at 205.

By Plaintiff's own admission, the NJ UCC displaces its common law negligence claims. (Amend. Compl. ¶ 16.) Therefore, Plaintiff's common law negligence claims will be dismissed.

### IV. CONCLUSION

For the reasons discussed herein, Defendants' motions to dismiss all counts of the complaint are **GRANTED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Magistrate Judge Steven C. Mannion